

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

August 1, 1961

Honorable W. W. Kilgore          Opinion No. WW-1101
County Attorney
Victoria County                  Re: Whether the county may
Victoria, Texas                      legally enter into a
                                     contract pertaining to
                                     the furnishing of hos-
                                     pital services for the
                                     employees of a county
Dear Mr. Kilgore:                    hospital.

Your request for an opinion concerns a contract entered into between Group Hospital Service, Inc., and Citizens Memorial Hospital, a county hospital, wherein Group Hospital Service, Inc., agrees to reimburse the hospital for hospital services furnished to the employees of the hospital up to the amount of dues paid by the employees covered. The contract further provides that if the amount of services furnished by the hospital are less than the amount of the dues paid by the employees that the difference will be paid to the hospital while on the other hand if the amount of services exceed those dues, the hospital, and hence the county, will pay to Group Hospital Service, Inc., the amount of the excess. You question the power of the county through the Board of Managers of said hospital to enter into this contract and, specifically, the liability of the county to pay a $7,008.28 assessment for the year 1960, which represents the excess of benefits afforded over dues paid for that particular year.

Three issues are presented:

1) Whether the contract is a lend-
   ing of the county's credit or a
   grant of public money in viola-
   tion of Section 52 of Article
   III of the Texas Constitution.*

2) Whether the effect of the contract
   is to make the county a "stockholder"

in a corporation in violation of
this same Section 52.*

3) Assuming the contract does not
violate Section 52,* is the
hospital's Board of Managers
authorized to enter into such
a contract.

The first question is answered in the negative
on the basis of Byrd v. City of Dallas, 118 Tex. 28, 6
S.W.2d 738 (1938), which upheld the validity of an act
permitting cities to make payments into a pension fund
for the benefit of its employees if such payments were
part of the compensation of the employees for services
rendered.  This same reasoning has been held applicable
to legislation permitting counties to pay hospitaliza-
tion insurance for their employees in a prior opinion by
this office (WW-731, 1959).  We can see no consequential
difference between the payments by the county here in-
volved and those in the Byrd case, supra, or in WW-731,
so far as the constitutional issue is involved.  We have
assumed in our answer that the obligation undertaken by
the county through the Board constitutes part of the com-
pensation of such employees rather than a gratuity.

The answer to the second question depends upon
the applicability of the case of Lewis v. Independent
School District of City of Austin, 139 Tex. 83, 161 S.W.
2d 450 (1942), in which the Supreme Court held that a
school district could not purchase insurance from a mutual
insurance company because it thereby in effect became a
stockholder in such company, the Court saying:

"This Court has held that Sec-
tion 52 of Article 3 of the Consti-
tution prohibits cities from becom-
ing members of a mutual insurance

---

* "The Legislature shall have no power to authorize any
county, city, town or other political corporation or
subdivision of the State to lend its credit or to
grant public money or thing of value in aid of, or to
any individuals, association or corporation whatsoever,
or to become a stockholder in such corporation, . . ."
Section 52, Article III, Texas Constitution.

> association whose subscribers are
> stockholders in such company. City
> of Tyler v. Texas Employers' Ins.
> Ass'n., Tex.Com.App., 288 S.W. 409;
> Id., Tex.Com.App., 294 S.W. 195;
> Southern Casualty Co. v. Morgan, Tex.
> Com.App., 12 S.W.2d 200; McCaleb v.
> Continental Casualty Co., 132 Tex.
> 65, 116 S.W.2d 679. (Emphasis added)

> ". . . The language used in the
> Constitution is clear and unambiguous.
> It specifically prohibits the School
> District from becoming a stockholder
> in a corporation, association, or com-
> pany. . . ."

In our opinion, Chapter 20 of the Texas Insurance Code, under which Group Hospital Service, Inc., was organized, does not require that corporations operating thereunder be mutual in nature, or more to the point, that its policyholders or the persons buying its service must necessarily participate in the affairs of the company to the same or similar extent as policyholders in a mutual company or as stockholders in a capital stock company.

In point of fact, the actual corporate plan of Group Hospital Service, Inc., is not mutual in nature. It is a non-profit corporation whose by-laws provide for the control of its affairs by the device of a self-perpetuating Board of Directors. There is no provision, either in the By-Laws, or in the contract sold, by which any so-called member has any vote or any voice in directing the policies or conducting the business of the corporation, nor do they contribute to the "capital" of said corporation. It should also be noted that Article 20.09 of the Code specifically provides that corporations of this type shall not be construed as being engaged in the business of insurance. Hence, we conclude that the contract does not violate the provision of Section 52 of Article III of the Constitution, prohibiting a county from becoming a stockholder in a corporation.

In answer to the third question, it is our opinion that the Board of Managers is authorized to enter into a contract as is here in question, and, consequently, the county has the obligation to pay the $7,008.28 now assessed against it under the terms of such contract.

Citizens Memorial Hospital of Victoria County is a county hospital and its operations are under the control of the County Commissioners of Victoria County and a Board of Hospital Managers and they operate under the provisions of Chapter 5 of Title 71 of Vernon's Civil Statutes, said chapter being entitled "County Hospitals."

It is stated in 15 Tex.Jur.2d 277, Counties, Sec. 48, in regard to the delegation of authority by the commissioners court to its agents, in part, as follows:

> ". . . By statute the commissioners' court is empowered to appoint agents for the accomplishment of purposes authorized by law. And the contracts or acts of such agents, when duly executed or done for or on behalf of the county, and within the scope of their authority, are declared to be valid and effectual to bind the county."

Article 4478, Vernon's Civil Statutes, provides in part as follows:

> "The commissioners court of any county shall have power to establish a county hospital . . . and shall have the following powers:
>
> ". . .
>
> "5. To appoint a board of managers for said hospital."

Article 4480, Vernon's Civil Statutes, provides in part as follows:

> ". . . The board shall have the general management and control of the said hospital, grounds, buildings, officers and employees thereof; of the inmates therein, and of all matters relating to the government, discipline, <u>contracts and fiscal concerns thereof; . . ."</u>   (Emphasis added)

Honorable W. W. Kilgore, Page 5 (WW-1101)

Also Article 4484, Vernon's Civil Statutes, provides in part as follows:

> "The board of managers shall keep in a book provided for that purpose a proper record of its proceedings, which shall be open at all times to the inspection of its members, to the members of the commissioners court and to any citizen of the county. The board shall certify all bills and accounts, including salaries and wages, and <u>transmit them to the commissioners court, who shall provide for their payment in the same manner as other charges against the county are paid."</u> (Emphasis added)

This office has held in Attorney General's Opinion R-2213 (1950):

> "When an obligation is incurred by the Superintendent of such hospital, such obligations must be approved by the Board of Managers. The Board of Managers thereafter must submit these bills and obligations to the County Commissioners' Court. The payment of these obligations and bills incurred by the hospital should then be made by the county in the same manner as other obligations of the county are paid. The expenditures for and on behalf of the hospital must not exceed that amount provided for the hospital by the Commissioners' Court."

It is therefore our opinion that the contract entered into by the Citizens Memorial Hospital was originally approved by the Board of Managers for said Hospital under the authority given to them by Article 4480 of Vernon's Civil Statutes and other authorities cited above. In our opinion Article 4480, Vernon's Civil Statutes, is sufficiently broad to authorize the contract as herein described; and such contract would not constitute a lending of credit or donation of public funds but rather compensation for future services to be rendered by the employees of the county hospital; hence, the contract would not come within the purview of Section 52, Article III, Texas Constitution. This contract has been in existence for many years. So long as the Board of Managers of the Citizens Memorial Hospital approves such claims, as is

provided for by the contract under consideration such contract is a valid and legal contract and the payments under the terms of the contract are to be made in the same manner as other obligations of the County are paid.

### SUMMARY

Counties may pay out premiums for insurance plans sold by corporations organized under Chapter 20 of the Texas Insurance Code without violating the provisions of Section 52 of Article III of the Constitution, either as to the lending of its credit or granting of public money or as to the provision prohibiting becoming a stockholder in a corporation; and, the Board of Managers of Citizens Memorial Hospital, a county hospital for Victoria County, had authority to enter into a contract with Group Hospital Service, Inc., for the purpose of furnishing medical and hospital services for its employees.

Yours very truly,

WILL WILSON
Attorney General of Texas

By I. Raymond Williams, Jr.
Assistant

IRWjr:mm

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Fred Werkenthin
Marietta Payne
Houghton Brownlee, Jr.

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Morgan Nesbitt